UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOAQUIN GONZALEZ-RAMIREZ; ARACELI DIAZ, individually, as the spouse of Joaquin Gonzalez-Ramirez,   Plaintiffs,  v.  HENDON ENGINEERING ASSOCIATES, INC.; BUFORD CISCO,   Defendants. | CASE NO. CV 06-B-0271-S |

## MEMORANDUM OPINION

Presently before the court is Defendants' Motion for Summary Judgment. (Doc. 16.)[1] Plaintiff, Joaquin Gonzalez-Ramirez, has sued defendants, Hendon Engineering Associates and Buford, alleging he was injured due to defendants' failure to provide him a safe workplace. His wife, plaintiff Araceli Diaz, claims loss of consortium. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motion for Summary Judgment is due to be granted.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference." *Evans v. Stephens*, 407 F.3d 1272, 1284

(11th Cir. 2005)(quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(emphasis added).

## II. STATEMENT OF FACTS[2]

Plaintiffs' claims arise out of personal injuries suffered by Gonzalez as a result of a construction accident which occurred on March 8, 2004. On the date of the accident, Gonzalez was laying PVC pipe in a trench when one side of the trench collapsed and covered him to his chest. Gonzalez suffered severe injuries including a broken pelvis, nerve damage, and a severed urethra. He claims that he has continuing physical problems as a result of his accident, including trouble with his urinary tract and severe back pain.

Plaintiff's employer, Giddens, Inc., was hired by the Utilities Board of the City of Sylacauga [hereinafter "the City"] as the contractor on the Valley View Pump Station and Force Main project. (*See* Def.'s Ex. 2C.) The City hired defendant Hendon Engineering, Inc. to provide engineering services for the project. (*See*, Def.'s Ex. 2B.)

Under its contract with the City, Hendon was to provide a full-time Resident Project Representative, [hereinafter "RPR"], to be present at the project site at all times to observe the work of the Contractor as it progressed to ensure that the work was in conformity with the plans and specifications for the project. (*Id*., ¶ 4; Def.'s Ex. 4, Affidavit of Buford Cisco, at

---

[2]As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to the plaintiffs, the non-moving parties. All disputed facts are resolved in plaintiffs' favor and all reasonable inferences arising from those facts are drawn in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.

2.) Defendant Buford Cisco was the RPR. However, neither Hendon, nor Cisco were responsible "for safety in, on, or about the job site, in control of the safety or adequacy of any construction equipment, building component, scaffolding, forms, or other work aids or for superintending the work." (*See*, Def.'s Ex. 2B ¶ 3.)

Giddens's obligations with respect to the performance of the work on this project were set forth in Paragraph 5.8 of the General Conditions of the Construction Documents, which states:

> (a) The Contractor shall and will, in good workmanlike manner, do and perform all work and furnish all supplies and materials, machinery, equipment, facilities and means, except as otherwise expressly specified herein, necessary or proper and complete all the work required by this contract, within the plans and drawings of the work covered by this contract and any and all supplemental plans and drawings, and in accordance with the directions of the Engineer as given from time to time during the progress of the work. He shall furnish, erect, maintain, and remove such construction plant and such temporary works as may be required. ***He alone shall be responsible for the safety, efficiency, and adequacy of his plant, appliances, and methods and for any damage which may result from their failure or their improper construction, maintenance, or operation.*** The Contractor shall observe, comply with, and be subject to all terms, conditions, requirements, and limitations of the contract and specifications, and shall do, carry on, and complete the entire work to the satisfaction of the Engineer and the Owner.
>
> (b) The Contractor shall maintain a record copy of the plans, specifications, addenda, and change orders available on the work at all times, and shall annotate all changes made during construction. The Contractor shall provide these record copies to the Engineer before final acceptance can be made.
>
> (c) The Contractor shall give to the work the consistent attention necessary to facilitate the progress thereof and shall provide a competent superintendent on the work at all times who is fully authorized as his agent on the work. The superintendent shall be capable of thoroughly understanding the

>plans and specifications and shall receive and fulfill instructions from the Engineer or his authorized representative.

(Def. Ex. 2C ¶ 5.8 at 7-7 [emphasis added].)  According to the terms of its contract, between the City and Giddens, Giddens was "solely and completely responsible for safety at the job site," (Def.'s Ex. 2C, Special Conditions, ¶ 8), and for compliance with all OSHA Regulations in the performance of the work, (*id*. ¶ 5.2.)  Further, the Giddens Contract explicitly states that "[t]he engineer and/or owner will not be responsible for establishing safety practices or for presenting safety measures for the contractor," and that the "the duty of the engineer to conduct construction review of the contractor's performance was not intended to include review of the adequacy of the contractor's safety measures, in, or near the construction site." (*Id.,* ¶ 5.2(e).)

Plaintiffs allege that defendants' failure to provide safety measures, including requiring a trench box, caused Gonzalez's injuries. (Doc. 20, Brief, at 4.)  No safety measures were employed in the trench in which Gonzalez was working on the day of the incident.  (Pl.'s Ex. 6, Cisco Depo. at 144.)  The trench was not sloped, benched, or shored, and no trench box had been installed to prevent a cave-in. (*Id*. at 138-39, 144; Def.'s Ex. 3, Pl.'s Depo. at 154-157.)

The Complaint alleges defendants were negligent or reckless, (Counts I, III, IV); intentionally failed to install a safety device in violation of Ala. Code § 25-5-11(c)(2) (Count II); willfully and intentionally violated federal and state safety regulations and Hendon's own

safety procedures (Count V); breach of contract (Count VI); and loss of consortium and services of spouse (Count VII). (Doc. 6.)

### III. DISCUSSION

Defendants move for summary judgment on the grounds that they had no contract with Gonzalez and that it owed him no duty with regard to safety.

### A. BREACH OF CONTRACT AND BREACH OF WARRANTY

In their Amended Complaint, plaintiffs allege, "There exists an implied contract between each Defendant and plaintiff Joaquin. These Defendants have the duty to protect Joaquin against unreasonable risk of harm at the work place." (Doc. 6 ¶ 30.) He alleges no facts that would support a claim based on a warranty, express or implied. Therefore, to the extent plaintiffs allege a breach of warranty claim, such claim will be dismissed.

In their Brief in Opposition to Motion for Summary Judgment, plaintiffs argue, "Cisco undertook the supervision of the work, he was there every day, nobody else was around, he was the only one having the power to stop the work or to change the method, but he did not. Cisco breached an implied contract for proper supervision."

In Alabama –

> "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002). The elements of a valid contract include: "'an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'" *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997)(quoting *Strength v. Alabama Dep't of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993)). "A contract

> implied in fact requires the same elements as an express contract, and differs only in the 'method of expressing mutual assent.' Implied contracts normally arise in situations where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement." *Ellis v. City of Birmingham*, 576 So. 2d 156, 157 (Ala. 1991)(quoting *Berry v. Druid City Hosp. Bd.*, 333 So. 2d 796, 799 (Ala. 1976)).

*Ex parte Jackson County Bd. of Educ.*, No. 1070878, 2008 WL 3877736, 3 (Ala. Aug. 22, 2008). The record contains no evidence of a bargained-for exchange between Gonzalez and Cisco and no evidence of any consideration for Cisco's supervision. Therefore, the court finds no evidence of any contract, implied or express, between defendants and Gonzalez.

Defendants Motion for Summary Judgment as to Count VI of plaintiffs' Amended Complaint will be granted and this Count will be dismissed with prejudice.

### B.   TORTS CLAIMS

#### 1. Negligence and/or Recklessness

"Fundamental to the maintenance of a negligence action is the existence of a legal duty of care owed by the defendant to the plaintiff." *Pugh v. Butler Telephone Co., Inc.*, 512 So.2d 1317, 1318 (Ala. 1987). Therefore, before any cause of action can be established, it is incumbent upon the plaintiffs to establish a duty owed by defendants to the plaintiffs. In Alabama,

> Whether a legal duty exists is a question of law. *Albert v. Hsu*, 602 So. 2d 895 (Ala. 1992)(citing *Rose v. Miller & Co.*, 432 So. 2d 1237 (Ala.1983)). This Court has relied upon the following principles relating to the question of duty:
>
>> "In general, 'every person owes every other person a duty imposed by law to be careful not to hurt him.' In determining whether a duty exists in a given situation, however, courts should consider a number of

7

> factors, including public policy, social considerations, and foreseeability. The key factor is whether the injury was foreseeable by the defendant. The essential question is 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'"
>
> *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993)(citations omitted). In addition to the key factor of foreseeability, this Court has recognized three related considerations in determining whether a duty exists: "the nature of the defendant's activity; . . . the relationship between the parties; and . . . the type of injury or harm threatened." *Morgan v. South Central Bell Telephone Co.*, 466 So. 2d 107, 114 (Ala. 1985)(citing W. Prosser, *Selected Topics in the Law of Torts*, at 655 (1984)).

*Patrick v. Union State Bank*, 681 So. 2d 1364, 1368-69 (Ala. 1996).

In this case, the contract between the City and Gonzalez's employer, Giddens, specifically and explicitly places all responsibility for Gonzalez's safety on the job site upon Giddens; this includes the responsibility for compliance with all state and federal laws and regulations, including OSHA regulations, regarding workplace safety. Also, Hendon's contract with the City relieves it of any responsibility with regard to job-site safety and/or compliance with safety laws and regulations.

Plaintiffs contend that defendants' duty to provide a safe workplace for Giddens's employees arose, not out of contract, but because Cisco was aware that Gonzalez was working "without a safety system" and using unsafe procedures. (Doc. 20, Brief in Opposition to Motion for Summary Judgment, at 13.) However, Cisco's knowledge of

unsafe conditions is not sufficient to create a duty.[3]  "Although it may be true that foreseeability is a key factor in determining whether a duty exists in a particular circumstance, and knowledge of a dangerous condition may establish foreseeability, Alabama case law does not hold that knowledge, by itself, is sufficient to impose a duty." *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, (Ala. 2008).  "Apart from premises liability, Alabama law does not support imposing a duty of care on a party based solely on that party's knowledge of the existence of a dangerous condition." *Id*.  "In addition to foreseeability, Alabama courts look to a number of factors to determine whether a duty exists, including  (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened." *Id*. (quoting *Taylor v. Smith*, 892 So.2d 887, 892 (Ala.2004)(quoting *Morgan v. South Cent. Bell Tel. Co.*, 466 So. 2d 107, 114 (Ala.1985))).

Defendant Hendon Engineering's obligations to the City under its contract were limited to providing engineering services and specifically excluded any responsibility for safety at the job site. Also, defendants had no relationship with Gonzalez or his employer.

---

[3] Plaintiffs also seem to suggest liability on the part of the defendants based on a theory that the project involved work that was inherently or intrinsically dangerous. However, under Alabama law, trench excavation has never been treated as an inherently or intrinsically dangerous activity. *See Thomas v. Pepper Southern Construction Co.*, 585 So.2d 882 (Ala. 1991); *Pugh*, 512 So.2d 1317; *Thompson v. City of Bayou La Batre*, 399 So.2d 292 (Ala. 1981); *Southern Mineral Company v. Barrett*, 199 So.2d 87 (Ala. 1967).

Moreover, Giddens, Gonzalez's employer was expressly responsible for providing him a safe work place.

The facts of this case are similar to *Pugh v. Butler Telephone Co., Inc.*, 512 So. 2d 1317 (1987). In *Pugh*, the estate of a deceased construction worker brought a wrongful death action against the premises owners, Butler Telephone Company, and Joseph D. Fail, Engineering Company, Inc. Butler had hired Sandidge Construction Company, the decedent's employer, to lay telephone cable. *Id*. at 1318. Butler had hired Fail Engineering to ensure that the construction of the project was in accordance with approved plans and specifications. *Id*. Pursuant to their contracts, Fail did not exercise any actual control over Sandidge's employees. *Id*. Furthermore, "[t]he engineering contract between Butler and Fail . . . provided that Fail's obligations 'run to and are for the benefit of only' Butler . . . ." *Id*. The decedent was killed when the sides of an excavation trench in which he was working collapsed on him. *Id*. The Alabama Supreme Court found Fail Engineering did not owe the decedent a duty; it held:

> While a party's negligent performance of a contract may subject that party to liability in tort for physical harm to others, see *Morgan v. South Central Bell Tel. Co.*, 466 So. 2d 107, 114 (Ala.1985), the ***scope*** of that duty, i.e., the persons to whom that duty runs, must be ascertained. Thus, for instance, a workmen's compensation carrier who makes safety inspections of its insured's premises owes a duty of care to the employees of that insured to perform the inspection non-negligently. *Beasley v. MacDonald Engineering Co.*, 287 Ala. 189, 249 So. 2d 844 (1971). That same carrier, however, making the same inspection of the same premises, owes no duty to the employees of an independent contractor who are on the insured's premises and who may be injured by a danger the carrier should have discovered. *Armstrong v. Aetna Ins. Co.*, 448 So. 2d 353 (Ala.1983). In *Armstrong*, we held that the scope of

>the duty of care should be co-extensive with the class of persons who were the intended beneficiaries of the inspection, i.e., the class of persons covered by the workmen's compensation policy. *Id*. at 355.
>
>A similar analysis must be made in the present case. Fail's inspections and other activities on site had nothing to do with the safety of Sandidge's employees. Fail's job was to insure compliance with the plans and specifications, for the benefit of Butler, the "owner."
>
>Fail had no responsibility to "exercise any actual control over employees of the Contractor." Its job responsibilities did not include oversight of safety on the job. Fail was on site simply to ensure compliance by the contractor with the plans and specifications and the terms of the construction contract, for Butler's . . . benefit.

*Pugh*, 512 So. 2d at 1319-20; *see also Tanksley v. Alabama Gas Corp.*, 568 So. 2d 731, 736-37 (Ala. 1990).

"It is axiomatic that the defendant in a negligence action must have a duty to the claimant. Whether a party owes a duty to another is strictly a question of law." *RaCON, Inc. v. Tuscaloosa County*, 953 So. 2d 321, 334 (Ala. 2006)(citing *Ex parte CSX Transp., Inc.*, 938 So. 2d 959, 962 (Ala. 2006); *Taylor v. Smith*, 892 So. 2d 887, 891 (Ala.2004)). In this case, defendants did not owe a duty to Gonzalez to provide for his safety. Therefore, defendants' Motion for Summary Judgment as to plaintiff's claims based on negligence or recklessness, (Counts I, III, and IV), will be granted and these claims will be dismissed.

**2. Intentional Torts**

Plaintiffs allege that "Defendants willfully failed to provide plaintiff Joaquin with the necessary support system, or shield system although they had the duty to do so," in violation

of Ala. Code § 25-5-11(c)(2), and that they "not only violated Federal and State rules related to the safety of Joaquin, but they have violated their own written safety rules." (Doc. 6 ¶¶ 22, 28.).

The Alabama Supreme Court has held, "there is no duty under § 25-5-11(c)(2) . . . on co-employees to *add* safety guards that the manufacturer fails to provide." *Harris v. Simmons*, 585 So. 2d 906, 907 (Ala. 1991)(quoting *Burkett v. Loma Machine Mfg., Inc.*, 552 So. 2d 134, 138 (Ala. 1989)). Plaintiffs have failed to establish that a safety device was provided to defendants that they willfully failed to utilize. Therefore, defendants' Motion for Summary Judgment as to this claim will be granted and this claim, (Count II), will be dismissed.

Plaintiffs' Amended Complaint alleges, "Defendants have not only violated Federal and State rules related to the safety of Joaquin, but they have violated their own written safety rules." (Doc. 6 ¶ 28.) In their Opposition to defendants' Motion for Summary Judgment, plaintiffs argue that "Defendants did not follow OSHA standards;" they contend:

> The contractual agreement between defendant Hendon and [the City] stipulates on section 5.2 (page 7-6) that OSHA regulations are to be followed at the worksite.
>
> By his own testimony, Cisco was well aware what the OSHA regulations are, but having the power to do so he willful[ly] and intentionally violated his company's own safety policies and procedures. *Deposition Cisco, Exhibit 6, page 151 [at ll.] 4-21*. The Expert Report states: "Hendon and Buford in his diary, show to be aware of the work to be done, how it was to be done and that it was being done in violation of the OSHA standards." *Exhibit 3, Section III, second paragraph.*

(Doc. 20, Brief in Opposition to Motion for Summary Judgment, at 20-21.)  Cisco's testimony does not support an inference that he willfully and intentionally violated safety procedures.  The testimony cited by plaintiffs only relates to the cause of the cave-in and the fact that Cisco did not know why the trench caved-in.  (Doc. 20, Ex. 6 at 155.)  Nothing in the record supports plaintiffs' claim that Cisco acted willfully and/or intentionally.

Also, plaintiffs' claim based on violations of safety laws, regulations, and procedures fails because plaintiffs have failed to show that defendants owed them any duty relating to the safety of Gonzalez's work environment.  For the reasons set forth above, the court finds that Giddens was responsible for Gonzalez's safety at work; it was responsible for complying with federal and state laws and regulations.  Although OSHA provisions may have set forth the appropriate standard for ensuring Gonzalez's safety, defendants had no duty to ensure Giddens's Compliance with those provisions.

Therefore, defendants' Motion for Summary Judgment as to this claim will be granted and this claim, (Count V), will be dismissed.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 30th day of September, 2008.

/s/ Sharon Lovelace Blackburn
------------------------------
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE

14